THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09-CV-275

UNITED STATES OF AMERICA, )
)
    Plaintiff, )
)
v. )    ORDER
)
JORICK MANAGEMENT LLC, )
)
    Defendant. )
_____)

THIS MATTTER is before the Court upon Plaintiff's Motion for Summary Judgment filed on May 3, 2010; Defendant's Response filed on June 3, 2010; and Plaintiff's Reply filed on June 14, 2010. Plaintiff seeks to enforce a levy served by the Internal Revenue Service on Defendant for payments of amounts owed by Defendant to the late Candace Jaehning, the tax-debtor. For the reasons stated below, Plaintiff's motion is GRANTED in part, and DENIED in part.

## BACKGROUND

Jorick Management, LLC ("Defendant") is a limited liability company formed under North Carolina law on October 28, 1997. (Def. Ex. 5). Defendant's original articles of organization listed Brett Nelson as the registered agent, and provided Mr. Nelson's home address as Defendant's official mailing address. (*Id.*) On January 5, 1998, Ernest Irvan acquired a 75% membership interest in Defendant, with Mr. Nelson retaining the remaining 25%. (Def. Ex. 1). A new Operating Agreement was signed on January 5, 1998 by Mr. Irvan and Mr. Nelson. (Def. Ex. 8). Mr. Irvan suffers from multiple severe brain injuries, sustained while stock car racing.

Defendant asserts that "[f]ollowing the 1994 accident, Mr. Irvan's ability to handle legal and business transactions [has been] severely impaired." (Def. Ex. 21 at 1).

In 1998, Mr. Nelson became interested in purchasing, as an investment for Defendant, 18.63 acres of land from JE Properties at Spee dway Boulevard in Concord, North Carolina ("Speedway Property"). (Def. Ex. 2, p.101). Candace Jaehning and Jack Elledge were co-owners of JE Properties. On September 4, 1998, Mr. Nelson, acting as an agent for Defendant, executed an Agreement for Purchase and Sale of Real Property ("Sales Agreement") for the purchase of the Speedway Property. The terms of the agreement required Defendant to pay earnest money in the amounts of $25,000 within 48 hours of acceptance of the Sales Agreement and $75,000 at the end of a 45 day examination period. The price of the land was $165,000 per acre. (Def. Ex. 7).

On November 9, 1998, Ms. Jaehning and Mr. Nelson entered into a separate agreement ("Jaehning Agreement") under which Defendant agreed to pay an "additional three hundred thousand dollars earnest money deposit to JE Properties" by December 14, 1998. (Pl. Ex. 108). In exchange, Ms. Jaehning agreed to loan Defendant $190,000 upon the distribution of her JE Properties profit. A promissory note purportedly signed by Mr. Nelson secured the loan and required Defendant to repay within 18 months. (Def. Ex. 12)

On December 11, 1998, Defendant paid the additional $300,000 earnest money to JE Properties, and on December 14, 1998, Ms. Jaehning loaned Defendant $190,000. (Def. Ex. 11 & 12). The $190,000 from Ms. Jaehning was deposited in Defendant's checking account on December 18, 1998. (Def. Ex. 13 & 14). The day following the Speedway Property closing on January 4, 1999, Mr. Nelson's assistant, Traci Lumley, issued a check from Defendant to Mr.

Nelson in the amount of $190,000. (Def. Ex. 17 & 18). The check was designated as a "loan to Brett." (Id.)

The last relevant transaction occurred on June 1, 2000 when Mr. Irvan and Mr. Nelson signed a Financial Agreement stipulating that "[t]he outstanding loan due and payable by [Defendant] to [Ms. Jaehning] for $190,000 will be offset by the loan due and payable to [Defendant] by [Mr. Nelson]. The two loans will offset each other and no interest or principle is due by any parties." (Def. Ex. 19).

On April 2, 2004, the Internal Revenue Service served Defendant with a levy of $190,000, which it claims Defendant owes the late Ms. Jaehning, and the IRS sought to apply to her tax liabilities. (Pl. Ex. 102) Defendant refused to pay the levy, and the United States seeks to recover the tax levy and a 50% penalty pursuant to 26 U.S.C. §6332(d).

## STANDARD OF REVIEW

Summary Judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is not genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the "initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth facts showing that there is a genuine issue for trial." Id. at 322. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to

defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Id.* at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677, 557 U.S. --- (2009)(quoting *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## DISCUSSION

26 U.S.C. §6331(a) permits the Government to collect the taxes of a delinquent taxpayer "by levy upon all property and rights to property belonging to such person." 26 U.S.C. §6332(d)(1) makes a "person who fails or refuses to surrender any property or rights to property... liable in his own person [] to the United States in a sum equal to the value of the property or rights not so surrendered... together with costs and interest on such sum." Plaintiff seeks enforcement of the levy and a fifty-percent penalty under 26 U.S.C. §6332(d)(2), which provides, "[i]f any person required to surrender property or rights to property fails to surrender such property or rights without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under [Section 6332(d)(1)]." 26 U.S.C. §6332(d)(2)(2010).

> In the situation where a taxpayer's property is held by another, and the IRS chooses to proceed by administrative levy, a notice of levy upon the custodian is customarily served pursuant to Section 6332(a). This notice gives the IRS the right to all property levied upon, *United States v. Eiland*, 223 F.2d 118, 121 (4th Cir. 1955), and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government. *Phelps v. United States*, 421 U.S. 330, 334 (1975). If the custodian honors the levy, he is "discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment." Section 6332(d). If, on the other hand,

the custodian refuses to honor a levy, he incurs liability to the Government for his refusal.

*U.S. v. Mauney*, 642 F. Supp. 1097, 1100 (W.D.N.C. 1986). There are two well-recognized defenses to the levy: (1) the defendant is neither in possession of nor obligated with respect to property or rights to property belonging to the delinquent taxpayer; or (2) the taxpayer's property is subject to a prior judicial attachment or execution. *U.S. v. Nat'l Bank of Commerce*, 472 U.S. 713, 721(1985).

Here, Defendant relies on the first *National Bank* defense: Defendant is neither in possession of nor obligated with respect to property rights belonging to Ms. Jaehning. Defendant raises multiple arguments to support its position: (1) Mr. Irvan did not possess the mental capacity to enter into the January 5, 1998 Operating Agreement; (2) Mr. Nelson did not possess the authority to bind Defendant to a $190,000 promissory note under the Operating Agreement; (3) Mr. Nelson did not possess the agency authority to bind Defendant to the promissory note under the common law of agency or N.C.G.S. §57C-3-23; (4) Mr. Irvan did not ratify Mr. Nelson's unauthorized act of borrowing $190,000; (5) Ms. Jaehning forgave the $190,000 debt before her death; and (6) Mr. Nelson did not sign the December 14, 1998 Promissory Note. (Def.'s Br. Resp. Pl's Mot. Summ. J. 9). In analyzing Defendant's arguments regarding the property rights of Defendant and Ms. Jaehning, the district court must apply state law. *Volvo Cars of North America, LLC v. U.S.*, 571 F.3d 373, 378(4th Cir. 2009).

The Defendant is governed by the North Carolina Limited Liability Act ("LLC Act"), which "contains numerous 'default' provisions or rules that will govern an LLC only in the absence of an explicitly different arrangement in the LLC's articles of organization or written operating agreement.... [therefore] an LLC is primarily a creature of contract." *Crouse v. Mineo*,

189 N.C. App. 232, 237 (N.C. Ct. App. 2008). Defendant's first four arguments assert that Mr. Nelson was not authorized to bind Defendant on the promissory note to Ms. Jaehning. One of the bases of these arguments is that Mr. Irvan did not have the mental capacity to enter into the Operating Agreement. The mental capacity required to enter into contractual agreements in North Carolina is well-settled.

> [A] person has mental capacity sufficient to contract if he knows what he is about, and that the measure of capacity is the ability to understand the nature of the act in which he is engaged and its scope and effect, or its nature and consequences, not that he should be able to act wisely or discreetly, nor to drive a good bargain, but that he should be in such possession of his faculties as to enable him to know at least what he is doing and to contract understandingly.

*Ridings v. Ridings*, 55 N.C. App. 630, 633 (1982)(citing *Sprinkle v. Wellborn*, 140 N.C. 163,181 (1905)( citation omitted)). "Evidence of mental condition before and after the critical time is admissible, provided it is not too remote to justify an inference that the same condition existed at the latter time." *L. Richardson Mem'l Hosp. v. Allen*, 72 N.C. App. 499, 502 (1985).

Defendant has successfully raised a genuine issue of material fact as to, at least, the first four arguments by putting forth an expert witness to support its contention that Mr. Irvan did not have the mental capacity to enter into the January 5, 1998 Operating Agreement. The witness, who examined and tested Mr. Irvan following several of his accidents, attests that following the 1994 accident, Mr. Irvan "did not have the ability to understand what he was doing regarding the scope and effect of moderate to complicated transactions or their nature or consequences." (Def. Ex. 21, p. 19). Specifically, the expert attests that after reviewing the Operating Agreement, in her opinion, "Mr. Irvan lacked the requisite signatory authority to execute the document." (Def. Ex. 21, pp. 2-3).

Mr. Irvan's capacity to execute the Operating Agreement determines whether Mr. Nelson had the authority to bind the Defendant on the promissory note, or whether, if the agreement is

invalid, Mr. Nelson had the agency authority to bind the Defendant under North Carolina statutory and common law of agency or the LLC Act. Therefore, there is a genuine issue of material fact as to Mr. Irvan's mental capacity to execute the Operating Agreement.

As to Defendant's remaining two arguments that are not based on the Operating Agreement or agency law, the first contends that Ms. Jaehning told Mr. Nelson that she forgave the debt owed to her before she passed away. (Def. Br. 25). Under North Carolina law, "there must be an intention to make a present gift accompanied by a delivery of the thing given or the means of obtaining it." *Sinclair v. Travis*, 57 S.E. 2d 394, 400 (N.C. 1950). In the event that the gift is the forgiveness of a debt "it is usually held that a valid gift may be made by… a destruction of the instrument with the intent to give or a written receipt delivered of a whole or a part of the debt." *Parker v. Mott*, 107 S.E. 500, 502 (N.C. 1921). Here, Defendant supports its position with the deposition of Mr. Nelson in which he indicates that Ms. Jaehning "told him 'you keep it,' referring to the $190,000 at issue." (Def. Br. 25). This does not constitute sufficient evidence of delivery to present a genuine issue of material fact.

Lastly, Defendant contends that Mr. Nelson's signature on the promissory note is a forgery, and therefore Defendant is not liable on the instrument. However, it is undisputed that Defendant actually received the $190,000 loan. In fact, in a June 24, 2000 document executed by Mr. Irvan and Mr. Nelson, Defendant acknowledged the $190,000 owed to Ms. Jaehning and declared that it would be offset by a loan due to Defendant from Mr. Nelson. (Def. Ex. 19). In a similar case before the North Carolina Supreme Court, even where actual forged signatures on mortgages formed the basis of liabilty from the corporate defendant and the individual owner of the corporate defendant to the plaintiff bank, because the bank actually extended the loans and the defendant actually received the loans, "[the defendant] could not deny liability on a claim

made by plaintiff without repaying the monies it received on the face of the forged instruments." *Wachovia Bank and Trust Co., v. Smith Crossroads, Inc.*, 129 S.E. 2d 116, 117 (N.C. 1963). Here, it is undisputed that Defendant actually received the proceeds of the loan from Ms. Jaehning; although, Defendant does imply that Mr. Nelson later improperly diverted the $190,000 for himself. However, it is also undisputed that Ms. Jaehning was never repaid. As it is clear that Defendant did, in fact, receive the $190,000 loan from Ms. Jaehning and did not repay the loan, regardless of the authenticity of Mr. Nelson's signature- Defendant remained liable for the "monies it received on the face of the forged instrument[]." Id. at 117. Therefore, the authenticity of Mr. Nelson's signature is not a material fact that precludes summary judgment.

## CONCLUSION

Summary judgment is not proper in this case because Defendant has raised a genuine issue of material fact as to Mr. Irvan's mental capacity to enter into the Operating Agreement; and, therefore, there is a question as to whether that document governs Mr. Nelson's authority to execute the promissory note. Accordingly, as to Defendant's first four arguments, Plaintiff's Motion for Summary Judgment is DENIED. As to Defendant's arguments that Ms. Jaehning forgave the debt on the promissory note and that Mr. Nelson's signature is not authentic, Plaintiff's Motion for Summary Judgment is GRANTED.

Signed: November 16, 2010

*[signature: Graham C. Mullen]*

Graham C. Mullen
United States District Judge